# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBIN N. YORK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-74-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Robin N. York requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-four years old at the time of the administrative hearing (Tr. 40). She completed the twelfth grade and has previously worked as a short order cook (Tr. 6, 204). The claimant alleges that she has been unable to work since October 25, 2009, due to hepatitis C, chronic obstructive pulmonary disease, anxiety, low back pain, hearing problems, vision problems, knee problems, mental problems, and a bad nerve (Tr. 203).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 on August 2, 2016, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, on August 30, 2016. Her applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 1, 2017 (Tr. 19-31). The Appeals Council then granted the claimant's request for review, adopted ALJ Mannes's findings at each step, and likewise determined that the claimant was not disabled in a written opinion dated January 8, 2019 (Tr. 4-7). The Appeals Council decision therefore represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ and the Appeals Council made this decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to light

work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she must avoid unprotected heights and/or moving mechanical parts. Additionally, she is limited to simple, routine tasks with frequent interaction with supervisors and coworkers, but only occasional interaction with the general public with the ability to respond appropriately to changes in a routine work setting (Tr. 6, 24). The ALJ determined that the claimant needed unscheduled work breaks each week lasting 3-5 minutes each, and the Appeals Council clarified that the claimant would need two to three of these unscheduled work breaks per week (Tr. 6, 24). The Appeals Council then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled, and adopted the ALJ's step five finding that there was work that the claimant could perform, *e. g.*, housekeeping cleaner, mail clerk, and document specialist (Tr. 5-7, 29-30).

### Review

The claimant contends that the Appeals Council and ALJ erred by: (i) improperly making findings as to her SSI claim because they did not have jurisdiction, (ii) improperly rejecting the opinions of the state reviewing physicians as to her mental impairments, and (iii) failing to make a proper consistency evaluation. The Court agrees with the claimant's second contention, and the decision of the Commissioner should therefore be reversed and remanded to the ALJ.

The Appeals Council affirmed the ALJ's finding that the claimant had the severe impairments of COPD, chronic liver disease, substance addiction disorder, and affective disorders (Tr. 6, 21). The medical evidence relevant to the claimant's physical impairments reflects that the claimant's Hepatitis C diagnosis occurred as far back as 2009, when she

reported losing her job as a short order cook when her employer found out about her diagnosis (Tr. 349-354). The treatment note from that day states that the claimant was not employable due to "society stigma" (Tr. 350). The record contains few treatment records after 2009 until July 2016, when the claimant presented to Southeast Clinic in McAlester, Oklahoma for follow up on complaints of abdominal pain and nausea that had sent her to the emergency room the previous week. Notes indicate that the claimant's labs showed no signs of infection, pancreatitis, or obstruction, and that she reported she had not used methamphetamines for two months, although she was injecting it twice per week before that time (Tr. 281). Eleven days later she reported knee pain of unknown etiology and for which imaging came back normal, and in September 2016 she presented for treatment of GERD, insomnia, and skin lesions (Tr. 271, 340). A physical exam was normal at that time (Tr. 274).

In March 2017, the claimant presented for follow up on labs related to her hepatitis C, noting chronic moderate symptoms (Tr. 320). She had an otherwise normal examination, and treatment notes indicate they were completing paperwork for her hepatitis C medication assistance (Tr. 323).

Jennifer Boyer Stevens, Psy.D., submitted a clinical psychological evaluation of the claimant dated April 28, 2010 (Tr. 356-358). Dr. Stevens noted that the claimant had "quite a drug abuse history," had poor dental hygiene, and appeared "jumpy" (Tr. 357). Furthermore, Dr. Stevens rated the quality of her thinking as poor, including poor abstract reasoning, below average intellect, poor memory function, and lacking social judgment skills, although she could concentrate and maintain mental control adequately (Tr. 357-

358).  Noting the claimant's drug abuse history, Dr. Stevens considered that it might have contributed to her reports of hallucinations, and wondered how the claimant had maintained employment for eighteen years previously given her limited mental abilities including below average intellect and lack of social intelligence, abstract reasoning, and adequate memory function (Tr. 358).  Dr. Stevens opined that the claimant would likely be slower than others with regard to pace and persistence and would likely be unpredictable in nature, and Dr. Stevens questioned whether she could manage money in her own best interest (Tr. 358).  Dr. Stevens diagnosed the claimant with depressive disorder NOS, polysubstance dependence in early full remission (per claimant's report), psychotic disorder NOS, and borderline intellectual functioning (provisional) (Tr. 358).

     Dr. Pauline Abbott conducted a physical exam and submitted a report dated May 6, 2010 (Tr. 361-365).  Dr. Abbott's diagnoses indicated that the claimant had Hepatitis C, tobacco abuse, possible chronic fatigue syndrome not substantiated by exam that day, and a history of illegal drug use, as well as resolved issues of a URI and contact dermatitis (Tr. 364).

     As to her physical impairments, state reviewing physicians initially and upon reconsideration found insufficient evidence of physical impairments as to the claimant (Tr. 64-65, 73-74).  Dr. Sally Varghese initially determined upon a review of the record that there was insufficient evidence as to the claimant's mental impairments (Tr. 65-66). Upon reconsideration, Dr. Edith King, Ph.D., found that the claimant's affective disorder and substance addiction disorders were severe, and found she had mild limitations in restriction of activities of daily living, and moderate limitations both in difficulties in

maintaining social functioning and maintaining concentration, persistence, and pace, but that she had no episodes of decompensation of extended duration (Tr. 74).  In completing a mental RFC assessment, Dr. King further found she had marked limitations in the areas of carrying out detailed instructions, completing a normal workday and workweek without interruption from psychologically-based symptoms, and interacting appropriately with the general public, as well as moderate limitations in the ability to understand and remember detailed instructions and maintain attention and concentration for extended periods (Tr. 77-78).  She concluded that the claimant could perform simple tasks with routine supervision, relate to others on a superficial work basis but not relate well to the general public, and adapt to a work environment (Tr. 78).

    In his written decision at step four, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record (Tr. 24-29).  As relevant, the ALJ found the claimant's statements not consistent with the medical evidence (Tr. 25-26).  In summarizing the treatment record, the ALJ noted the gap in evidence between 2010 and 2016, and that the 2016-2017 treatment notes were largely normal despite the claimant's complaints (Tr. 26-27).  As to her mental impairments, the ALJ found that they affected her overall functioning but not to the degree alleged, noting the claimant had not sought mental health treatment or been referred for such (Tr. 27).  The ALJ noted Dr. Stevens's consultative examination but made no mention of her findings nor her recommendations in summarizing the opinion (Tr. 28).  He then assigned little weight to the state reviewing physician opinions as to the claimant's physical impairments, but significant weight to the state reviewing physician opinion as to Dr. King's assessment, noting that her opinion was

consistent with the Dr. Stevens's findings and opinion related to below average intellectual ability, poor social skills, expectation to work at a slower pace than others with unpredictable persistence, and her presentation of poor insight and judgment (Tr. 28-29). The ALJ then noted that the additional mental limitation of unscheduled work breaks per week of 3-5 minutes was out of an abundance of caution and consideration for the claimant's memory problems and dizziness (Tr. 29). The Appeals Council largely adopted the ALJ's findings but noted that the ALJ erred in failing to specify the frequency of breaks per week,[2] and added without recitation to or support from the record that the claimant required two to three unscheduled work breaks per week, each lasting three to five minutes (Tr. 5-6). The Appeals Council ultimately adopted the ALJ's determination that the claimant was not disabled (Tr. 6-7).

As an initial matter, the Court addresses the claimant's argument that the Appeals Council and ALJ lacked jurisdiction over her SSI claim because the state agency never made an initial determination as to her claim for eligibility, and that this Court therefore lacks jurisdiction as well. "Social security hearings are subject to procedural due process considerations." *Johnson v. Colvin*, 2015 WL 1097307, at *6 (N.D. Okla. March 11, 2015), *citing Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005), *and Allison v. Heckler*, 711 F.3d 145, 147 (10th Cir. 1983). Here, the claimant asserts that the record provides no indication that the state agency took action with regard to her SSI claim, and that the denials

---

[2] The Appeals Council likewise determined that the ALJ misidentified the codes from the Dictionary of Occupational Titles related to the claimant's past relevant work as a short order cook and the job of housekeeping cleaner identified at step five. These findings are not at issue before the Court.

at the initial and reconsideration levels only address her DIB claim. She contends this adversely affected her because the state agency reviewing physicians only considered evidence prior to her December 31, 2014 date last insured. The Commissioner contends that neither the ALJ, the Appeals Council, nor this Court lacked jurisdiction because agency policy allows for an SSI application to be escalated to the hearing level when the claimant has a DIB case concurrently pending, *see* Program Operations Manual Systems (POMS), DI 12045.010(A)(2), and the claimant was given a full and fair hearing by the ALJ and the Appeals Council as to her SSI claim. The record reflects that the claimant's SSI claim was "escalated" to the hearing level, and that the ALJ indicated at the administrative hearing that he was considering both claims (Tr. 28, 38). There is some question as to whether escalation was proper under the POMS guidance here because the claimant's date last insured was in 2014, and the protective filing date for her SSI claim is August 30, 2016, which means that the claims do not share an overlapping time period. This case therefore appears to fail to meet the POMS requirements of a "common issue." *Id.* However, such failure to follow the POMS manual alone does not constitute a due process violation where, as here, the ALJ gave sufficient notice as to a full and fair hearing regarding her SSI claim. *See, e. g.*, *Henningson v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 194 F.3d 1320, 1999 WL 728061, at *4 (10th Cir. 1999) (unpublished table opinion) ("Although the POMS is not legally binding, we give controlling weight to the agency's interpretation of its own regulation unless it is arbitrary, capricious, or contrary to law."). *See also Mallory v. Social Security Administration*, 2010 WL 11618991, at *2 (D. N.M. Nov. 18, 2010) ("When evaluating

the authority of the Social Security Claims Manual, the Supreme Court held that it 'is not a regulation, it has no legal force, and it does not bind the SSA.'"), *quoting Schweiker v. Hansen*, 450 U.S. 785, 789 (1981); *Jiminez Estate of v. Astrue*, 2009 WL 10708193, at *8 (D. N.M. May 14, 2009) ("[T]he notion of procedural due process in the Social Security arena typically means a full and fair hearing before the ALJ."). Moreover, the ALJ gave little weight to the state reviewing physician opinions as to the claimant's physical impairments, noting that the physicians mistakenly only considered evidence prior to her date last insured and that the SSI case was later escalated (Tr. 28). Furthermore, there was no evidence in the record as to limitations assigned to the claimant related to her mental impairments after the date last insured. Accordingly, the Court finds no due process violation here.

Next, the claimant argues that the ALJ failed to properly assess Dr. King's opinion, despite giving it significant weight. Specifically, she contends that the ALJ failed to account for Dr. King's finding that the claimant was markedly limited: (i) in her ability to carry out detailed instructions, (ii) in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (iii) in the ability to interact with the general public. As to the second marked limitation, she further points out Dr. King's notation that she was expected to work at a slower pace than others with unpredictable persistence. She therefore asserts that Dr. King's assigned RFC failed to account for the expectation that the claimant would be expected to work at a slower pace than others with unpredictable persistence, and that the limitation of additional

unscheduled breaks – even as clarified by the Appeals Council – are not equivalent to this marked limitations.

Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, although the ALJ's RFC assessment found the claimant could perform simple, repetitive tasks and only have superficial contact with co-workers and supervisors, and no contact with the general public, it did not *account for* Dr. King's findings related to the claimant's inability to keep a regular work pace (Tr. 6-7, 28-29). Indeed, the ALJ even stated that the addition of unscheduled breaks is due to the claimant's reports of memory problems and dizziness, *not* her need to work at a slower pace than others. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The Commissioner asserts that the findings of marked limitations contained in the first section of the mental RFC assessment are merely a "worksheet" and not Dr. King's ultimate opinion. *See* Social Security Administration Program Operations Manual System (POMS) DI 24510.060, *Mental Residual Functional Capacity Assessment* ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment is for recording the mental RFC determination [and is] the actual mental RFC assessment [as] recorded."). The Commissioner thus argues that the findings of marked limitations are not necessary for inclusion in the ultimate RFC assessment because this position has been adopted in at least one unpublished opinion by the Tenth Circuit. *See Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015). *See also Nelson v. Colvin*, 655 Fed. Appx. 626, 628-629 (10th Cir. 2016) (finding the Section III narrative adequately captured the limitations found in Section I, and the ALJ's limitation of the claimant to unskilled work accounted for the marked limitations). However, the Tenth Circuit has found that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015) (emphasis added). *See also Guinn v. Berryhill*, 2018 WL 626247, at *3 (D. N.M. Jan. 30. 2018) ("None of these cases stands for the proposition that an ALJ may ignore Section I findings. Such argument is not

substantially justified."); *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163-1164 (D. N.M. 2016 ("[T]he Court has surveyed the cases from our circuit that expressly address the distinction between Section I and Section III. If read in a vacuum, *Smith*[ *v. Colvin*, 821 F.3d 1264 (10th Cir. 2016)] and *Sullivan*[ *v. Colvin*, 519 Fed. Appx. 985 (10th Cir. 2013)] could be interpreted in the Commissioner's favor, but the others could not. . . . While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat: the Section III findings must adequately account for the Section I findings."). And here, the unaccounted-for limitations were marked, not moderate, which bolsters the claimant's argument even further.

The ALJ thus failed to conduct the appropriate analysis regarding the state reviewing physician opinions in the record. Instead, he imposed an RFC that would avoid a finding of disabled, while improperly ignoring at step four evidence related to the claimant's mental impairments, thus imposing an RFC that fails to account for *all* the evidence in the record. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). "[I]t is incumbent on the ALJ

to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *2.

Because the Appeals Council, which adopted the ALJ's findings at step four, failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**